NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HYDROPATH USA, INC., : | Hon. Dennis M. Cavanaugh |
| Plaintiff, : | |
| : | OPINION |
| v. : | |
| : | Civil Action No. 10-CV-4563 (DMC)(MF) |
| HYDROPATH HOLDINGS, LTD. et al, : | |
| Defendants. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Motion for Summary Judgment filed by Defendant, Hydropath Holdings, Ltd. (ECF No. 55, July 14, 2012). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendant's Motion is **granted.**

I.   BACKGROUND[1]

Hydropath Holdings, Ltd. ("Hydropath Holdings" or "Defendant") is a manufacturer of certain products which are used to treat water to remove minerals, formed in England with a principal place of business in Nottingham, United Kingdom.  Hydropath USA, Inc ("Hydropath USA" or "Plaintiff") is a corporation of New Jersey. Plaintiff is wholly owned by Oren Neumann, who lives and has always lived in Israel.

On March 15, 2009, Defendant entered into an agreement (the "Agreement") with

---

[1]This section is taken from parties pleadings.

1

Plaintiff and HQ Hometek, Inc ("Hometek") which provided that Plaintiff was the exclusive distributor for Defendant in the United States and Hometek was the assignee of Defendant in the United States for two years beginning March 15, 2009 and ending March 15, 2011 for: "units branded HydroCare equivalent to HS38" ("designated product"). The Agreement required Plaintiff to purchase the designated product from Defendant and to resell it to Hometek. The Agreement required Plaintiff to purchase 6,000 units of the designated product in year one and to purchase an additional 9,000 units of the designated product in year two.

Pursuant to the Agreement, Plaintiff could order additional products from Defendant, but Plaintiff was not the exclusive distributor in the United States for those additional products. Plaintiff's purchase of additional products did not count toward the satisfaction of its obligation to purchase 6,000 units of the designated product in year one and an additional 9,000 units of the designated product in year two of the Agreement.

Pursuant to the Agreement, Plaintiff received all product orders from Hometek. Plaintiff then ordered the products from Defendant to fill those orders. After receiving the products from Defendant, Plaintiff resold the product to Hometek.

The Agreement required Plaintiff to pay Defendant for products within 90 days of the date of invoice. The Agreement also provided that if Plaintiff failed to pay Defendant for products within 90 days of the date of the invoice, Defendant could cancel or suspend any further delivery to Plaintiff under any product order. The Agreement provided that Plaintiff's failure to pay for any product was a breach of the Agreement and Defendant could terminate the Agreement. The Agreement also provided that if Plaintiff failed to pay for any product, but Hometek paid Plaintiff for those products, Hometek could continue the Agreement in Plaintiff's

place as distributor.

On or about June 2, 2010, Plaintiff ordered 500 domestic water conditioners from Defendant at a unit price of 37 English pounds per unit. An invoice was sent to Plaintiff that day. The units were received by Plaintiff and resold to Hometek by invoice dated June 10, 2010. Plaintiff was paid in full by Hometek. Plaintiff's president Oren Neumann admitted at depositions that Plaintiff received the units from Defendant, resold them to Hometek, received payment from Hometek but Plaintiff did not pay Defendant. Mr. Neumann also testified that he put the money received from Hometek into a bank where it is "safe," but he didn't know if it was still there.

On or about June 30, 2010, Plaintiff ordered an additional 500 domestic water conditioners from Defendant at a unit price of 37 English pounds per unit. Plaintiff received the goods and resold them to Hometek by invoice of July 13, 2010. Mr. Neumann admitted at depositions that the units were received by Plaintiff and resold to Hometek. Plaintiff never made payment of these invoices to Defendant.

On or about September 7, 2010, Plaintiff filed a Complaint in this Court. The Complaint had a single count, claiming Defendant "breached its contracts with Plaintiff by improperly terminating its distribution agreement with plaintiff and selling Hydropath products directly to Hometek." (Pl.'s Am. Compl. Sept. 7, 2010, ECF. No. 1, ¶ 20). In the Amended Complaint, Plaintiff alleges:

> On or about June 14, 2010, Defendant Hydropath Holdings informed Plaintiff that it terminated its agreement with Plaintiff. Defendant Hydropath Holdings never provided a ninety day notice to cure or provide its basis for terminating the distribution agreement as required by §11 of said agreement.

3

(Id. at ¶ 19). Defendant claims that as of the date the Complaint was filed, Defendant had not terminated the Agreement nor had Plaintiff treated the Agreement as terminated, as Plaintiff sent a purchase order to Defendant on September 21, 2010. Defendant wrote Plaintiff an email on October 6, 2010, informing Plaintiff that it was suspending delivery pursuant to the Agreement, because payment of the invoice of June 2, 2010 had not yet been made.

On October 26, 2010, Defendant answered Plaintiff's complaint, and made two counterclaims. (ECF No. 8). For the purposes of summary judgment, Defendant moves only on its allegation that Plaintiff breached the Agreement by failing to pay for product it ordered from Defendant and resold to Hometek. On October 27, 2011, Plaintiff filed an Amended Complaint adding two new defendants that subsequently settled with Plaintiff. (Pl.'s Am. Compl., ECF No. 26).

## II.     STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986). "'In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

As a threshold matter, pursuant to the Agreement, the performance of the parties is to be measured by English law. Paragraph 14.1 of the Agreement provides: "This Agreement shall be governed by and construed in all respects in accordance with the Laws of England, and each party hereby submits to the non-exclusive jurisdiction of the English courts." (ECF No. 55-2, Distribution Agreement). However, Defendant alleges that there is "no material distinction between the law of New Jersey and the law of England with regard to the rights and obligations of the parties." (Def.'s Br. 5). Both parties cite exclusively to New Jersey law, and thus the Court will be guided by New Jersey law.

**A. Summary Judgment for Plaintiff's Claim**

Defendant first agues that summary judgement should be granted in its favor as Plaintiff admitted during discovery that the single claim in the Amended Complaint is erroneous. In the Amended Complaint, Plaintiff alleges:

> On or about June 14, 2010, Defendant Hydropath Holdings informed Plaintiff that it terminated its agreement with Plaintiff. Defendant Hydropath Holdings never provided a ninety day notice to cure or provide its basis for terminating the distribution agreement as required by §11 of said agreement.

(Pl.'s Am. Compl. ¶ 19).

At depositions, Plaintiff's president Mr. Neumann was questioned about the alleged termination of June 14, 2010. (See Def.'s Br, Ex. C, T 73-9 to 74-11). When asked whether the Agreement was terminated or breached, Mr. Neumann admitted that Defendant did not terminate the Agreement that day. He stated that "it was breached. The agreement was in place." Id. Additionally, Defendant argues by placing an order on June 30, 2010, two weeks after Plaintiff claims the Agreement was terminated, and on September 21, 2010, two weeks after filing this lawsuit, Plaintiff acted as if the Agreement was still in place. (Def.'s Br. 5). At his deposition, Mr. Neumann admitted that Plaintiff could not have placed these orders if the Agreement were terminated on June 14, 2010. (Id., Ex. C, Tr. 99-11 to 100-21.)

In Plaintiff's Opposition Brief, Plaintiff argues that the Agreement should be read to cover all "residential products," and not just "units branded HydroCare equivalent to HS38;" if the Court does read the Agreement more expansively, then Defendant would have breached the Agreement by selling products to Defendant Hydroflow Holdings, U.S.A. (Pl.'s Opp'n Br. 6-7). The Court is unconvinced by Plaintiff's arguments. The express language of the Agreement, which the Amended Complaint relies upon, states that it only applies to "units branded HydroCare equivalent to HS38," not to "residential" products. Plaintiff offers no evidence to persuade the Court to read beyond the express language of the Agreement.

Defendant argues that the "uncontroverted proofs demonstrate that Hydropath Holdings did not terminate the Agreement on June 14, 2010. Thus, the only allegation in the Amended Complaint against Hydropath Holdings is unproven." (Def.'s Br. 6). The Court agrees. As Plaintiff has admitted that the only allegation made in the Amended Complaint is untrue, summary judgment in Defendant's favor is appropriate.

6

### B. Summary Judgment on Defendant's Counterclaim

Defendant also argues that summary judgment should be granted to Defendant on Defendant's counterclaim. Defendant's counterclaim alleges Plaintiff breached the Agreement by failing to pay for the product it ordered from Defendant and resold to Hometek. Defendant requests summary judgment against Plaintiff on Counts I and II of the Counterclaim for 37,000 English pounds ($57,153.83), the amount of the two unpaid invoices. (Def.'s Br. 8).

As explained above, on both June 10 and June 30, 2010, Plaintiff ordered 500 water conditioners from Defendant at a unit price of 37 English pounds per unit. (Def.'s Br. 7). Plaintiff resold the goods to Hometek, and received payment from Hometek. The invoices provided that payment was due from Plaintiff within 60 days; Plaintiff never paid Defendant for these two orders of product. (Id.)

Defendant first alleges that Plaintiff's non-payment alone is evidence of Plaintiff's breach, and thus are entitled to the unpaid balance. See Franconia Assocs. v. United States, 536 U.S. 129, 142-43 (2002) ("Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach.")

Defendant next argues that Plaintiff was not excused from performance because Plaintiff did not rescind the Agreement. To terminate the Agreement for breach, Plaintiff was required to give written notice pursuant to the Agreement. Paragraph 11.3 of the Agreement provided that:

> Either party shall be entitled forthwith to terminate this Agreement by written notice to the other if:
> > 11.3.1 that other party commits any breach of any of the provisions of this Agreement and, in the case of a breach capable of remedy, fails in remedy to the same within 90 days after receipt of a written notice giving full particulars of the breach and requiring it to be remedied. .

Defendant argues that Plaintiff never gave written notice of a breach, pursuant to the Agreement, as evidenced by Mr. Neumann's deposition. (Def.'s Br. 10, Ex. C, Tr. 78-15 to 25):

> Q. Well under the terms of the tri-party agreement, wasn't there an obligation to give 90 days notice if you thought the agreement had been breached.
> Mr. Rubin. Objection.
> A. Yes. I think I didn't give it.
> Q. Well how come you didn't give them notice that you thought they had breached the agreement?
> A. Because I didn't know that I need to do it.

Defendant also argues that Plaintiff elected to continue the Agreement after alleging it was breached on June 14, 2010. "Under no circumstances may the non-breaching party stop performance <u>and</u> continue to take advantage of the contract's benefits." <u>Travelodge Hotels Inc. v. Honeysuckle Enterprises, Inc.</u>, 357 F. Supp. 2d 788, 798 (D.N.J. 2005) (emphasis in original). Defendant argues that because Plaintiff "elected to continue the Agreement, Plaintiff had no legal excuse to withhold its obligation to pay the two June, 2010 invoices and continue its efforts to sell the products of Hydropath Holdings for through the remainder of the term." (Def.'s Br. 14). The Court agrees.

Plaintiff was contractually obligated to pay Defendant within 90 days of the invoice, as provided by the Agreement, and was not excused from performance by properly terminating the Agreement. Thus Defendant is entitled to the sum of $57,153.83 (37,000 English pounds), the amount of the two unpaid invoices.

### C. Attorney's Fees

Defendant summarily states that "Hydropath Holdings should also have summary judgement for legal fees under English law," citing to an English Civil Procedure Rule.

(Def. Br. 8). However, as this Court has applied exclusively New Jersey law to the case at hand, as per both parties pleadings, the Court will apply the American Rule for attorneys fees. The Court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the 'American Rule:' Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Hardt v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149, 2156–57 (2010) (internal citations omitted). Thus Defendant's motion for attorney's fees is denied.

### IV.   CONCLUSION

For the reasons stated above, it is the finding of this Court that Defendant's Motion for Summary Judgment is **granted**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Dated:      February 27, 2013
Original:   Clerk's Office
cc:         Hon. Mark Falk, U.S.M.J.
            All Counsel of Record
            File

9